741 So.2d 852 (1999)
STATE of Louisiana
v.
James Tyrone RANDALL, Defendant-Appellant.
No. CR98-1763.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1999.
Rehearing Denied July 15, 1999.
*853 Charles F. Wagner, Dist. Atty., Thomas Carl Walsh, Jr., Alexandria, for State of Louisiana.
Michael Brewer, Pineville, for James Tyrone Randall.
BEFORE: DOUCET, C.J., COOKS and PICKETT, Judges.
*854 COOKS, Judge.
Defendant appeals his simple robbery conviction and sentence of life imprisonment without benefit of parole, probation or suspension of sentence.

FACTS
On the evening of January 24, 1997, the victim, Darrell Chew, was riding home on his bicycle in the City of Alexandria. The victim encountered two men, Roger Lee Harris and James Tyrone Randall. Harris asked the victim if his name was Norman Chew. The victim told him that Norman was his brother. When the two men began calling him names, the victim elected to hastily leave the scene. The two men chased him. One of them grabbed the front and the other grabbed the back of his bicycle. The victim was hit in the head by Harris with a beer bottle and knocked off the bicycle. After he fell, the two men proceeded to kick him. The victim then observed the two men riding away with his bicycle.
After the beating, while the victim was en route home, he encountered Alvin Cooper. Mr. Cooper noticed the victim had mud and blood on his hands, jacket and hair. When Mr. Cooper asked the victim what happened, the victim told him someone beat him. The victim was able to communicate with Mr. Cooper who eventually helped him to a friend's house, where an ambulance was called.
The victim gave a physical description of the perpetrators to the police, including a description of the clothing the two men were wearing. Shortly thereafter, the two males were apprehended in possession of the bicycle in close proximity to the incident site. A sweatshirt, which contained bloodstains, was obtained from defendant, James Tyrone Randall. A DNA analysis was performed on the sweatshirt and the bloodstains on the sweatshirt were of the same genetic profile as the victim.
Defendant was charged by bill of information with committing armed robbery, in violation of La.R.S. 14:64. Defendant waived formal arraignment and entered a plea of not guilty. After a trial on the merits, a jury found defendant guilty of the responsive verdict of simple robbery, a violation of La.R.S. 14:65. A motion for new trial was denied by the trial court. Defendant was sentenced to serve seven years at hard labor, with credit for time served.
The State filed a petition seeking to have defendant declared a fourth felony offender in accordance with the provisions of La.R.S. 15:529.1. Defendant entered a plea of not guilty to the state's habitual offender bill. Subsequently, the court adjudicated defendant a third felony offender; and assigned written reasons in open court. The court then vacated the sentence which it previously imposed, resentencing defendant to life imprisonment without benefit of parole, probation or suspension of sentence. A later motion to reconsider sentence was denied by the trial court. Defendant lodged this appeal asserting two assignments of error.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant contends the trial court erred in failing to grant his motion for mistrial. Defendant argues during the trial on the merits, two pieces of evidence were disclosed which should have been furnished to him prior to trial. Defendant maintains he was unable to obtain a fair trial without disclosure of the evidence in advance of trial.
First, defendant alleges the State failed to provide him with the taped, transcribed statement taken by Detective Marcus Bynog from the victim. After the State's opening statement was completed, defense counsel objected because the State alluded to the fact that Detective Bynog had taken a statement from the victim. Defense counsel argues he filed a timely motion for discovery and requested opportunity to inspect and copy any documents which were intended for use by the State *855 as evidence at trial. Responding, the State urges defendant was not entitled to this statement because it did not intend to use the actual statement itself at trial. Defendant insists the State's reference to the victim's statement without providing it to defendant violated La.Code Crim.P. art. 718, which provides as follows:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
On the other hand, the state contends the article does not apply in this instance because the statement was not favorable to defendant and it was not intended for use by the state in its case in chief.
In State v. Berry, 95-1610 (La.App. 1 Cir. 11/8/96); 684 So.2d 439, writ denied, 97-278 (La.10/10/97); 703 So.2d 603, the First Circuit found the state was not required to disclose to the defense a transcribed statement of a witness, made to the police during their investigation, as the review of the witness' statement and the testimony revealed no material inconsistencies, and the witness' statement was not exculpatory. Additionally, this court in State v. McCartney, 96-58, p. 14 (La.App. 3 Cir. 10/9/96); 684 So.2d 416, 426, writ denied, 97-508 (La.9/5/97); 700 So.2d 503, held "[s]tatements made by witnesses to state agents are generally not discoverable unless they are favorable to the defendant and are material and relevant in determining guilt or innocence." We have reviewed the victim's statement to Detective Bynog and find the statement was not exculpatory. Further, during trial the court agreed to perform an in camera inspection of the statement to make certain it did not contain any exculpatory information. This assignment of error simply is without merit.
Defendant also contends a mistrial should have been granted because the state failed to provide defendant with a copy of the search warrant obtained by Detective Bynog and the affidavit that formed the probable cause basis for the search warrant. The defense became aware of the warrant and the complaint was lodged after the witnesses were placed under the rule of sequestration but before the presentation of evidence. The defense asked the court to suppress any evidence which the state obtained as a result of the search warrant noting the defense filed a timely discovery motion which asked for all warrants. In the state's answer to the motion for discovery, the state indicated the search warrant and affidavit were filed with the Clerk of Court. At the hearing, the state accepted fault for not providing the defense with the affidavit and search warrant. But, the state explained the district attorney thought defense counsel had access to the information through the Clerk of Court's office. The record does not indicate whether the search warrant was on file with the Clerk of Court. However, when this court requested a copy of the search warrant and affidavit, the Clerk of Court's office indicated the information was not on file with that office.
Defense counsel requested a mistrial, arguing he could not defend his client if he received discovery during trial. Hair, blood and saliva samples were taken from the defendant as a result of the warrant and defendant was furnished with a copy of the laboratory analysis of the DNA *856 results prior to trial. At trial, defendant stipulated the blood found on his shirt was that of the victim. Initially, the trial judge stated he would exclude the warrant and any evidence obtained as a result of the warrant. However, the state objected to the judge's decision as an extreme remedy because the defense received the DNA report. On reconsideration, the trial judge excluded only what the defendant had not received, specifically finding defendant was not prejudiced by the DNA report.
After reading the statements in the affidavit supplied by the state during trial, defense counsel also alleged the defendant made admissions to the robbery by stating his co-defendant, Harris, struck the victim in the head with a beer bottle. Defense counsel argued the state was required to produce defendant's statements. The trial judge informed defense counsel he previously ruled that the search warrant and affidavit were inadmissible. The trial judge also agreed to exclude any evidence from Detective Bynog relating to defendant's confession, as well as any other evidence obtained as a result of the warrant, other than that stipulated to by the state and defense.
La.Code Crim.P. art. 775 provides the following grounds for a mistrial:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
In response to defendant's discovery request, the state agreed to permit him to inspect, copy and examine the evidence in the state's possession and intended for use at trial. According to the state, defendant never requested opportunity to examine the evidence. In addition, the state argues defendant knew a search warrant existed because blood, pubic hair and saliva samples had been taken from him for the purposes of the DNA analysis.
A mistrial is a drastic remedy and a trial judge has broad discretion in determining whether certain conduct is so prejudicial as to deprive an accused of a fair trial. State v. Crawford, 95-1352 (La. App. 3 Cir. 4/3/96); 672 So.2d 197. The determination whether to grant a mistrial is within the sound discretion of the trial judge, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. The motion should be granted only where the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Smith, 433 So.2d 688 (La.1983).
Defendant has not demonstrated how he was prejudiced by not receiving the search warrant and affidavit before the trial. While defendant claims he could have filed a motion to suppress any evidence obtained as a result of the search warrant, he should have known the warrant existed because blood, hair and saliva samples were obtained from him for DNA analysis. Defendant also was provided with a copy of the laboratory analysis of the DNA. Further, defendant stipulated the victim's *857 blood was found on his sweatshirt. Additionally, the state agreed to allow defendant to inspect, copy and examine the evidence in its possession which it intended to use for trial. We note, as well, the trial judge excluded the use of the search warrant and affidavit at trial. The trial judge did not exclude all the evidence obtained as a result of the search warrant because defendant had been provided with a copy of the crime lab report before the trial and was not surprised by its existence. Defendant did not suffer such substantial prejudice so as to deprive him of a fair trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant asserts the district court imposed an unconstitutionally excessive sentence. Defendant was originally sentenced for committing simple robbery to serve seven years at hard labor. However, the State filed a petition seeking to have defendant declared a fourth felony offender in accordance with La.R.S. 15:529.1. A hearing was held, after which the court found defendant was a third felony offender. The trial court vacated the seven year sentence and resentenced defendant to serve a term of life imprisonment without the benefit of parole, probation, or suspension of sentence.
Where the third habitualizing felony or either of the prior two felonies is one defined as a crime of violence, La.R.S. 15:529.1(A)(1)(b)(ii) provides:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felonygrade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * *
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
* * *
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Simple robbery is one of the enumerated offenses defined as a crime of violence under La.R.S. 14:2(13)(y).
The state presented the following prior offenses for which defendant was convicted: The December 1, 1997 simple robbery conviction, a January 22, 1992 conviction for simple robbery, and a June 13, 1989 conviction for illegal possession of stolen goods between $100.00 and $500.00.
At the conclusion of the habitual offender hearing, the trial court decided not to order a pre-sentence investigation, assuming he was compelled to follow the mandate of La.R.S. 15:529.1. The trial court stated:
All right. The court is aware of the jurisprudence indicating that in certain cases the court can deviate from the mandated habitual offender sentence.

*858 However, in this particular case while it involved the robbery of a bicycle, the court tried the case. It was tried before a jury and as the Court recalls it involved great physical harm and damage to the victim. There was some indication that the victim was left for dead. He was seriously injured and actually could have been killed under the circumstances of that robbery.
And for those reasons the Court is not inclined nor does it feel that it can given the circumstances deviate from the mandate of the habitual offender law.
We note the victim, though injured, was able to leave the scene of the crime without assistance and he attempted to walk home. He was eventually assisted to a friend's house by a good Samaritan. We also note it is undisputed that Roger Lee Harris, the co-defendant, struck the victim with the beer bottle.
The trial judge gave the following additional reasons at sentencing for imposing a life sentence:
I'm filing written reasons at this time. Mr. Johnson it's just basically upholding your objection to theto one of those matters finding that it was a third offense instead of a fourth offense. All right. But that makes Mr. Randall a third felony offender.
Further, in accordance with R.S. 15:529.1(D)(2), two of the prior felonies are crimes of violence under R.S. 14:213 being simple robberies. So the Court is going to vacate the prior sentence that had been imposed and sentence Mr. Randall as a third felony offender under the provisions R.S. 15:529.1 and Mr. Randall you are hereby sentenced to life imprisonment without benefit of parole, probation or suspension of sentence in accordance with R.S. 15:529.1.
A sentence may be reviewed for constitutional excessiveness even though it is within statutory guidelines. State v. Cann, 471 So.2d 701, 703 (La.1985). If the sentence needlessly imposes pain and suffering and is grossly out of proportion to the gravity of the offense so as to shock our sense of justice, then it may be unconstitutionally excessive as violative of La. Const. art. 1, § 20 (1974). State v. Lobato, 603 So.2d 739 (La.1992). However, a sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits.
In State v. Dorthey, 623 So.2d 1276, 1280-1281 (La.1993), the Louisiana Supreme Court recognized "if the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no `measurable contribution to acceptable goals of punishment' or that the sentence amounted to nothing more than `the purposeful imposition of pain and suffering' and is `grossly out of proportion to the severity of the crime,' he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive." Defendant points out in this instance none of his convictions, prior to the December, 1997 conviction, were crimes of direct violence against a person.
The Louisiana Supreme Court, in State v. Johnson, 97-1906 (La.3/4/98); 709 So.2d 672, recently elaborated on what a defendant must demonstrate to successfully obtain a deviation from the mandatory sentences of La.R.S. 15:529.1. The court instructed that a downward departure from the mandatory sentences of La. R.S. 15:529.1 "should occur only in rare situations."
In Johnson, the court did not find the mandatory minimum sentence of twenty years excessive for a defendant whose current offense was possession of cocaine residue in a crack pipe and whose prior convictions were non-violent felonies. It reversed the trial court's decision to depart from the mandatory minimum sentence of twenty years and sentenced the defendant to thirty months. The court in Johnson also addressed the goals of the Habitual Offender Law, noting:

*859 Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders.
We in no way question the wisdom of the Legislature in enacting the Habitual Offender Law. Nor do we dispute its laudable goal of deterring and punishing recidivism. And we most certainly agree defendant is the quintessential criminal who deserves enhanced punishment for his continuing disregard for the laws of our state. He has not learned much from his previous punishments; and we, like the trial judge, are convinced his sentence should be substantially and meaningfully enhanced, though we cannot affirm a life sentence in this instance.
Defendant is only twenty-nine years old. Our jurisprudence has held age is a factor which should be considered when statutes impose such harsh penalties. State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98); 723 So.2d 1013; State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98); 712 So.2d 1019; State v. Taylor, 96-1843 (La. App. 4 Cir. 10/29/97); 701 So.2d 766. While defendant unquestionably deserves imprisonment, a life sentence without benefit of parole, probation or suspension of sentence, would defeat any rehabilitative goal of our penal system; and in this rare instance, it is fundamentally excessive. The United States Supreme Court has declared the Eighth Amendment to the United States Constitution bars excessive punishment, i.e., punishment that "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). The Eighth Amendment bar also applies to punishment imposed by state courts. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court invalidated a prison sentence on the ground that it was too severe in relation to the crime defendant committed, stating:
In sum, we hold as a matter of principal that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional. As the court noted in Robinson v. California, 370 U.S., at 667, 82 S.Ct., at 1420, a single day in prison may be unconstitutional in some circumstances.
463 U.S. at 290, 103 S.Ct. at 3009 (footnote omitted).
Legislatively mandated minimum sentences, as well as those imposed by trial courts within a statutory range, do not automatically meet constitutional muster. We must review all sentences for constitutionally prohibited excessiveness. A life sentence forever closes the door of hope that this young defendant might one day learn from his past mistakes and ready himself to become a productive participant in our society. See, State v. Burns, supra. This State's, as well as the United States Constitution, prevents us from affirming such sentences, even if legislatively ordered, based on this record.
*860 Accordingly, we affirm defendant's conviction and habitual offender adjudication, vacate the sentence and remand for resentencing in accordance with the views expressed herein. On remand, we note the supreme court in Johnson stated when departing downward from the minimum sentence under the Habitual Offender Statute, the sentencing judge must sentence the defendant to the longest sentence which is not constitutionally excessive.
CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
DOUCET, C.J., concurs in the result.
PICKETT, J., dissents on the issue of remanding for resentencing.